# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ERNEST M. CHAVEZ; MYRNA CHAVEZ, | Case No.: 2:10-cv-00325-RLH-LRL |
| Plaintiffs, | **O R D E R** |
| vs. | (Motion to Dismiss–#7) |
| CALIFORNIA RECONVEYANCE COMPANY; WASHINGTON MUTUAL BANK, FA, and DOES I-X; ROES I-X, inclusive, | |
| Defendants. | |

Before the Court is Defendant California Reconveyance Company's **Motion to Dismiss** (#7), filed March 30, 2010. Plaintiffs filed no opposition.

### BACKGROUND

In March 2006, Plaintiffs Ernest and Myrna Chavez purchased the real property located at 5635 Lusitano Street in Las Vegas, Nevada. Plaintiffs financed this purchase through a mortgage loan from Defendant Washington Mutual Bank, FA ("WaMu"). Defendant California Reconveyance acted as the trustee for the loan under the Deed of Trust. Plaintiffs eventually defaulted on their mortgage obligation, causing a Notice of Default and Election to Sell to be recorded against the property on September 17, 2009. Following continued nonpayment,

1

California Reconveyance caused a Notice of Trustee's Sale to be recorded on February 19, 2010 and a Trustee's Sale to be set for March 10.

On March 9, 2010, Plaintiffs filed suit in this Court against Defendants seeking damages as well as relief with respect to the foreclosure sale. Plaintiffs state nine claims in their complaint: (1) misrepresentation and fraud by omission; (2) quiet title; (3) contractual breach of duty of good faith and fair dealing; (4) tortious breach of the implied duty of good faith and fair dealing; (5) civil conspiracy; (6) civil RICO and racketeering; (7) unjust enrichment; (8) fraud by obtaining signature by false pretenses; and (9) declaratory relief. Plaintiffs also implicitly allege claims for unfair lending and wrongful foreclosure. On March 30, Defendant California Reconveyance filed a Motion to Dismiss Plaintiffs' complaint. For the reasons discussed below, the Court now grants Defendant's motion.

## DISCUSSION

### I.     Motion to Dismiss

A court may dismiss a Plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. At 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption

2

of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the Defendant is liable for the alleged misconduct. *Id*. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, Plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

**A.   Unfair Lending**

Plaintiffs implicitly allege Defendants violated Nevada's Unfair Lending Practices Statute, NRS 598D.100. The party moving to dismiss Plaintiffs' Complaint, California Reconveyance, was not the lender here. The Court nonetheless evaluates Plaintiffs' claim.

NRS 598D.100 prohibits lenders from making loans "without determining, using commercially reasonable means or mechanisms, that the borrower has the ability to repay the home loan." NRS 598D.100(1)(b) (2007). Effective October 1, 2007, NRS 598D.100 was amended to make it an unfair lending practice to "make a home loan ... to a borrower ... without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the loan." 2007 Nev. Stat. 2846 (amending NRS 598D.100(1)(b)(2003)). Prior to 2007, when Plaintiffs' loan was executed, NRS 589D.100 only made it an unfair lending practice to "make a home loan to a borrower based solely upon the equity of the borrower in the home property without determining that the borrower has the ability to repay the home loan from other assets." NRS 598D.100(1)(b)(2003). Plaintiffs' references to "no doc" and "stated income" loans do not state a claim under this statute because these kinds of loans were not prohibited until 2007. Accordingly the Court dismisses Plaintiffs' unfair lending claims.

/

**B.  Wrongful Foreclosure**

In their Complaint, Plaintiffs implicitly allege wrongful foreclosure under NRS 107.080. Nevada recognizes the tort claim of wrongful foreclosure where a homeowner alleges that a lender wrongfully exercised the power of sale and foreclosed upon their property when the homeowner was not in default on the mortgage loan. *See Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). However, Plaintiffs do not dispute their delinquency on the mortgage. Instead, they imply that the foreclosure was improper because of the securitization practices engaged in by Defendants and the mortgage industry in general. Although this statute does not provide homeowners with a private right of action for tort damages, it does allow a court to void a trustee's sale executed pursuant to NRS 107.080 if, *inter alia*, the person or entity that conducted the sale does not substantially comply with the statute. NRS 107.080(5)(a). Thus, the Court interprets Plaintiffs' claim as a request for a declaration that Defendants' substantial non-compliance with NRS 107.080 resulted in an improper exercise of their power of sale.

However, Plaintiffs do not state a claim upon which relief can be granted. NRS 107.080 does not forbid the securitization of a loan. The alleged securitization of Plaintiffs' loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course. Taking Plaintiffs' allegations as true, Plaintiffs' claim for wrongful foreclosure still fails because they do not allege that the foreclosure was wrongful under the statute.

**C.  Misrepresentation and Fraud by Omission, and Fraud by Obtaining Signature by False Pretenses**

Misrepresentation is a form of fraud where a false representation is relied upon in fact. *See Pacific Maxon, Inc. v. Wilson*, 96 Nev. 867, 871 (Nev. 1980). To state a claim for fraudulent misrepresentation in Nevada, a plaintiff must allege that (1) defendant made a false representation; (2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a

4

result of his reliance. *Barmettler*, 956 P.2d at 1386. Fraud has a stricter pleading standard under Rule 9, which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pleading fraud with particularity requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also Morris v. Bank of Nev.*, 886 P.2d 454, 456 n.1 (Nev. 1994). Plaintiffs' claim for misrepresentation fails because it was not pled with specificity under Rule 9(b). Nowhere in the Complaint do Plaintiffs allege who made the fraudulent statements, when the statements were made, or where they were made. Moreover, Plaintiffs fail to allege the specific content of the fraudulent statements—their allegations only include broad generalizations. Thus, the Court dismisses Plaintiffs' misrepresentation claim.

### D. Quiet Title

Plaintiffs bring an action to quiet title, arguing that their title was clouded by the securitization of their loan. This assertion fails to state a claim under Rule 12(b)(6). Plaintiffs provide no legal or factual justification for their quiet title claim other than the conclusory allegation that the securitization of their loan was wrongful. The Court therefore finds that Plaintiffs' quiet title claim does not rise above a speculative level. Defendant's Motion to Dismiss this claim is granted.

### E. Contractual Breach of the Duty of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting the Restatement (Second) of Contracts § 205 (1981)). "[W]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract... damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). Plaintiffs have not stated a viable claim because none of their allegations indicate that Defendants violated the terms of the written mortgage contract or

AO 72
(Rev. 8/82)

prevented Plaintiffs from receiving a contractual benefit. The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093–94 (Ca. Ct. App. 2004). The "scope of the covenant is only as broad as the contract that governs the particular relationship." *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329 (Mass. 2007) (internal quotation marks omitted). Therefore, the Court dismisses Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

     **F.**    **Tortious Breach of the Implied Duty of Good Faith and Fair Dealing**

State claims for tortious breach of contract have been recognized in Nevada as a tort claim of breach of the implied covenant of good faith and fair dealing. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997); *Jacques v. Sierra Pacific Power Co.*, 872 F. Supp. 776, 777 (D. Nev. 1994) (treating a "bad faith" claim as a claim for tortious breach of contract). As a general rule, breach of the implied covenant of good faith and fair dealing is a contract claim. *See A.C. Shaw Constr., Inc. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989). Tort liability does not arise "unless there is a special relationship between the tort-victim and the tortfeasor." *State v. Sutton,* 120 Nev. 972, 989 (Nev. 2004). Tort liability for breach of the good faith covenant is limited to "rare and exceptional cases," *K Mart Corp. v. Ponsock*, 732 P.2d 1364, 1370 (Nev. 1987), and is appropriate where "the party in the superior or entrusted position" has engaged in "grievous and perfidious misconduct." *Great Am. Ins. Co.*, 934 P.2d at 263.

Courts have repeatedly held that a lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties. *See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) (stating "the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances"), *aff'd in relevant part by Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007). Plaintiffs have not alleged facts that could give rise to a special relationship or

exceptional circumstances. Payment for a lender's services does not amount to an exceptional circumstance between a borrower and a lender that gives rise to a special relationship. Thus Plaintiffs cannot show a breach of fiduciary duty.

Further, an implied covenant of good faith and fair dealing cannot contradict the terms of the contract from which it stems. *See, e.g., Storek & Storek, Inc. v. Citicorp. RealEstate, Inc.,* 100 Cal. App. 4th 44, 64 (2002). Plaintiffs do not make any specific allegations of misconduct by any defendant under the terms of the loan documents. Plaintiffs have not alleged that any defendant prevented them from making monthly payments, or otherwise prevented them, as the borrowers, from performing their obligations under the Deed of Trust and other loan documents. Plaintiffs provide no legal or factual justification for their claim other than conclusory allegations that Defendants' conduct was somehow wrongful. The Court therefore finds that Plaintiffs' breach of good faith claim does not rise above a speculative level. Because Plaintiffs fail to state a tortious breach claim under Rule 12(b)(6), Defendant's Motion to Dismiss this claim is granted.

**G.    Civil Conspiracy**

In Nevada, an actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels v. Butch Lewis Productions,* 862 P.2d 1207, 1210 (1993) (citing *Sutherland v. Gross,* 772 P.2d 1287, 1290 (1989)). Civil conspiracy requires that the defendants have an intent to accomplish an unlawful object for the purpose of harming another party. *Dow Chem. Co. v. Mahlum,* 970 P.2d 98, 112 (1998).

Plaintiffs allege that Defendants engaged in illegal activity in connection with their loan business. Plaintiffs fail to state a claim for civil conspiracy because they fail to identify the parties to any conspiracy, and do not allege any specific set of facts regarding concerted action in furtherance of an unlawful objective.

/

7

AO 72
(Rev. 8/82)

### H. Civil RICO and Racketeering

To state a cause of action under RICO, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005). In order to successfully state a claim under RICO, a plaintiff must allege the predicate acts upon which his claim depends with sufficient particularity to satisfy the requirements of F.R.C.P. 9(b). *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). "The pleader must state the time, place, and specific content of the false misrepresentations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.,* 486 F.3d 541, 552 (9th Cir. 2007) (internal citation omitted). Plaintiffs have not met the heightened standards for pleading contemplated for a RICO claim. Plaintiffs have not alleged with specificity the time, place, or specific content of any illegal activity. Defendant's Motion to Dismiss this claim is granted.

### I. Unjust Enrichment

"An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (1997) (citing Am. Jur. 2d Restitution § 6 (1973)). Plaintiffs have not stated an actionable claim for unjust enrichment because an express contract for Plaintiffs' loan and payments exists. Plaintiffs' mortgage was governed by an express contract under which Defendants were entitled to repayment. This contract was not destroyed by the alleged securitization of Plaintiffs' loan. Thus, the existence of an express contract precludes Plaintiffs' claim. Accordingly, the Court dismisses this claim.

### J. Injunctive and Declaratory Relief

Plaintiffs further allege that Defendants no longer possess any interest in Plaintiff's home as they are not lenders pursuant to NRS 598D.50. The alleged securitization of Plaintiffs'

1  loan did not destroy Defendants' interest in that loan nor prevent them from being holders in due
2  course.
3      Because Plaintiffs have not stated any valid claims, the Court dismisses the petition for
4  injunctive and declaratory relief. In sum, all of Plaintiffs' claims against California Reconveyance
5  are dismissed.

6  **II.   Claims against Washington Mutual Bank**

7      On its own motion, the Court considers Plaintiffs' claims against WaMu, and
8  concludes the Court lacks subject matter jurisdiction over these claims because Plaintiffs have
9  failed to exhaust their administrative remedies. On September 25, 2008, the Office of Thrift
10 Supervision ("OTS") appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver
11 for Washington Mutual Bank. When the FDIC is appointed as Receiver, it succeeds to "all rights,
12 titles, powers and privileges of" the failed financial institution, and may "take over the assets of
13 and operate" the failed institution with all the powers thereof. *See* 12 U.S.C. §§ 1821(d)(2)(A)(i),
14 1821 (d)(2)(B)(i) (2006). This includes the resolution of outstanding claims against the failed
15 institution in receivership. *Id.* § 1821 (d)(3). Following the appointment of a receiver for a failed
16 financial institution, federal statute provides for a mandatory claims procedure against that failed
17 institution. This administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13),
18 centralizes the initial consideration and resolution of claims by requiring that all claims be
19 submitted to the receiver. Section 1821 (d)(13)(D) withdraws jurisdiction from all courts to hear
20 claims against the FDIC, as receiver, except as otherwise provided elsewhere in Section 1821(d).
21 Jurisdiction is "otherwise provided" by subsection 1821(d) only for those claimants that have
22 completed the administrative claims process. *See, e.g., id.* §§ 1821(d)(6)(A)(ii), (d)(7)(A), and
23 (d)(8)(c). If a litigant does not file an administrative claim, courts also lose subject matter
24 jurisdiction to continue with any action which was filed prior to the FDIC being appointed as
25 receiver. *See, e.g., Simon v. FDIC,* 48 F.3d 53, 56 (1st Cir. 1995) ("Section 1821(D)(l3)(D)(i) bars
26 all claims against the assets of a failed financial institution which have not been presented under

AO 72
(Rev. 8/82)

the administrative claims review process."). Plaintiffs have not alleged that they followed the administrative claims procedure. The Court thus lacks subject matter jurisdiction to hear Plaintiffs' claims.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant California Reconveyance Company's Motion to Dismiss (#7) is GRANTED.

IT IS FURTHER ORDERED that California Reconveyance is DISMISSED from this case, and that the Court has no jurisdiction over Defendant Washington Mutual Bank, FA.

The Court directs the Clerk of the Court to close this case.

Dated: June 17, 2010.

_____
ROGER L. HUNT
Chief United States District Judge

10